IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| KENNETH BROWN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 2:20-cv-02315-SHL-atc |
| ) | |
| JOHNNY FITZ, ) | |
| ) | |
| Respondent. ) | |

**ORDER DENYING PETITION PURSUANT TO
28 U.S.C. § 2254, DENYING A CERTIFICATE OF
APPEALABILITY, CERTIFYING THAT AN APPEAL WOULD
NOT BE TAKEN IN GOOD FAITH, AND DENYING LEAVE
TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Before the Court are the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("§ 2254 Petition"), filed by Petitioner, Kevin Brown, (ECF No. 1); Respondent's Answer to Petition for Writ of Habeas Corpus ("Answer"), filed by Respondent, Johnny Fitz, (ECF No. 43); Brown's Reply to Answer to Petition for Writ of Habeas Corpus ("Reply"), (ECF No. 46); and Fitz's Sur-Reply, (ECF No. 49). For the reasons stated below, the Court **DENIES** the § 2254 Petition.

I.     BACKGROUND

       A.     **State Court Procedural History**

On April 21, 2011, a grand jury in Shelby County, Tennessee returned a thirty-count indictment, Indictment Number 11-02623, against Brown; his brother, Devon Brown; and David Richardson. (ECF No. 42-27 at PageID 2916-46.) Counts 1 through 13 charged all defendants with the attempted first degree murder of Lemarcus Moore (Count 1), Felix Williams (Count 2), Christopher Braxton (Count 3), Kenneth Baker (Count 4), Travis D. Britton (Count 5), Robrecus

Braxton (Count 6), Nakia Greer (Count 7), Chymia Baker (Count 8), Jalon Baker (Count 9), Rodney Davenport (Count 10), Terriance Webb (Count 11), Cleotha Norwood (Count 12), and Kimberly Jamerson (Count 13).  (*Id.* at PageID 2916-28.)  Counts 14 through 26 charged all defendants with the aggravated assault of Lemarcus Moore (Count 14), Felix Williams (Count 15), Christopher Braxton (Count 16), Kenneth Baker (Count 17), Travis D. Britton (Count 18), Robrecus Braxton (Count 19), Nakia Greer (Count 20), Chymia Baker (Count 21), Jalon Baker (Count 22), Rodney Davenport (Count 23), Terriance Webb (Count 24), Cleotha Norwood (Count 25), and Kimberly Jamerson (Count 26).  (*Id.* at PageID 2929-41.)  Count 28 charged Brown with employing a firearm during the commission of a felony.  (*Id.* at PageID 2943.)  Count 30 charged all defendants with reckless endangerment with a deadly weapon, thereby placing DeAngelo Smith, Bianca Nevels, Sonja Watkins, Dakarrionah Laury, Amber Laury, and Whitney Henderson in imminent danger of death or serious bodily injury.  (*Id.* at PageID 2945.)  On November 29, 2011, the grand jury returned Indictment Number 11-07432, which charged the same three defendants with the first degree murder of Kimberly Jamerson.  (ECF No. 42-1 at PageID 565-66.)

A jury trial on the charges against Brown commenced in the Shelby County Criminal Court on October 1, 2012.  (*Id.* at PageID 606.)  On October 6, 2012, the jury convicted Brown of first degree murder in Indictment Number 11-07432, (*Id.* at PageID 621), and also returned guilty verdicts on Counts 1 through 12, 14 through 25, 28, and 30 in Indictment Number 11-02623.  (*Id.*; ECF No. 42-24 at 2797-98.)[1]  That day, the trial judge sentenced Brown to life imprisonment with

---

[1] Counts 13 and 26—the attempted murder and aggravated assault counts against the murder victim, Kimberly Jamerson—had previously been dismissed.

2

the possibility of parole for the murder in Indictment Number 11-07432. (ECF No. 42-24 at PageID 2803-04.) A judgment was entered on October 6, 2012 for that indictment. (ECF No. 42-1 at PageID 629.)

A sentencing hearing on Indictment Number 11-02623 was held on November 16, 2012, at which time the trial judge merged the convictions for attempted murder and aggravated assault and sentenced Brown to a term of imprisonment of twenty-five (25) years on Counts 1 through 12, six (6) years on Counts 14 through 25, six (6) years on Count 28, and two (2) years on Count 30. The sentences for Counts 1 through 12 and for Count 30 were ordered to be served as a Range I standard offender at 30% release eligibility, and the sentence for Count 28 was ordered to be served at 100%. The trial judge ordered that those sentences and the life sentence for the murder be served consecutively to each other, resulting in a total sentence of life imprisonment with the possibility of parole plus 308 years. (ECF Nos. 42-25 at PageID 2861-66, 42-27 at PageID 2947-73.) The Tennessee Court of Criminal Appeals ("TCCA") affirmed. *State v. Brown*, No. W2013-00329-CCA-R3-CD, 2014 WL 5092906, at *18 (Tenn. Crim. App. Oct. 9, 2014) ("*Brown I*").

On May 14, 2015, Brown filed a *pro se* Petition in Support of Post-Conviction Relief and a supporting memorandum in the Shelby County Criminal Court. (ECF No. 42-34 at PageID 3123-29, 3130-55.) After counsel was appointed to represent Brown, (*id.* at PageID 3159), an Amended Petition for Post-Conviction Relief was filed on September 22, 2015, (*id.* at PageID 3163-67). The State responded on September 22, 2015, and December 7, 2015. (*Id.* at PageID 3168-69.) A hearing on the post-conviction petition was held on July 7, 2017, at the conclusion of which the post-conviction court denied relief. (*Id.* at PageID 3170; ECF No. 42-35 at PageID

3

3346-68.) A written order denying relief was entered on August 4, 2017. (ECF No. 42-34 at PageID 3171-3209.) The TCCA later affirmed. *Brown v. State*, No. W2017-01755-CCA-R3-PC, 2019 WL 931735, at *14 (Tenn. Crim. App. Feb. 22, 2019) ("*Brown II*"), *appeal denied*, (Tenn. July 25, 2019) (ECF No. 42-44).

In its opinion on direct appeal, the TCCA summarized the evidence introduced at trial. *Brown I*, 2014 WL 5092906, at *1-10. The events at issue occurred on July 3, 2010, at 2306 Northmeade in Memphis. During the initial events, approximately thirty people were present at the home for a Fourth of July celebration. Kenneth Brown and Devon Brown drove up and stated that someone at the residence had taken some marijuana from them valued at five dollars ($5.00). However, the person who had allegedly taken the marijuana was not present.

The men drove away, but returned a few minutes later with David Richardson. Felix Williams gave Kenneth Brown five dollars and asked the men to leave. Robrecus Braxton testified that the car nearly "clipped" him when it pulled away. In response, Braxton threw a beer can into the open passenger window of the car. A fist fight then ensued. The men later drove away, threatening to return. *Id.* at *2-3, 6.

Several hours later, the three men returned, heavily armed. Numerous gunshots were fired, killing Kimberly Jamerson and striking Lemarcus Moore. *Id.* at *3-4. Bullets also hit the house, where young children were present. *Id.* at *5-6. Two neighbors, Mark Chambers and Steve Chambers, also fired shots as they attempted to rescue Moore. *Id.* at *4.

Kenneth Brown gave a statement to the police in which he recounted his version of the marijuana transaction and subsequent events. After accepting the five dollars, Kenneth Brown attempted to drive away. However, he overheard people at the scene "talking violent" before

4

someone threw a beer can into his car, hitting him. *Id.* at *8. After a fist fight, Kenneth Brown returned home, where he saw people from Northmeade in a car near his house. In response, the Brown brothers and Richardson returned to Northmeade. Kenneth Brown was armed with a Glock .45, Devon Brown had a shotgun, and Brown did not know what kind of gun Richardson had. Kenneth Brown told the police he fired six to eight shots with no intent to shoot anyone. He did not pay attention to what Devon Brown and Richardson were doing. *Id.* at *8.

    **B.**    **Brown's § 2254 Petition**[2]

On April 27, 2020, Brown, through counsel, filed his § 2254 Petition, which presents the following claims:

1. Denial of right to compulsory process due to the trial court's failure to compel the production of Beatrice Vaulx or, alternatively, due to the ineffective assistance of trial counsel in failing to subpoena Vaulx or demand a material witness warrant, (ECF No. 1 at PageID 4-7);

2. Admission of involuntary confession, (*id.* at PageID 7-9); and

3. Omission of jury instruction on proximate cause of death, including that counsel was ineffective in failing to request such an instruction, (*id.* at PageID 9-12).

On September 22, 2022, the Court directed the Warden, Johnny Fitz, to file the state court record and a response to the § 2254 Petition. (ECF No. 38.) Fitz filed the record on November 17, 2022, and his Answer on November 21, 2022. (ECF Nos. 42-43.) Brown, through his second retained counsel, filed his Reply on January 19, 2023. (ECF No. 46.) On February 16, 2023, the Warden filed his Sur-Reply, for which he had received leave of Court. (ECF No. 49.)

---

[2] The lengthy procedural history of this matter and the various motions filed have been addressed in previous orders and will not be repeated here.

## II.     ANALYSIS

### A.     Failure to Present the Testimony of Beatrice Vaulx (Claim 1)

In Claim 1, Brown argues that his right to compulsory process was violated because a fact witness, Beatrice Vaulx, was not called to testify on his behalf at trial and at the post-conviction hearing. Brown further avers that trial counsel and post-conviction counsel were ineffective in failing to secure the testimony of Vaulx. (ECF No. 1 at PageID 4-7.)

At trial, defense counsel gave notice that they intended to call a witness, later identified as Vaulx, who was in the hospital but whose doctor advised would be available the next morning. (ECF No. 42-23 at PageID 2610.) However, Vaulx did not appear the next day. Defense counsel told the trial judge that its investigator had been sent to the hospital to see if the sleep study that Vaulx had been participating in was over and, if so, to bring her to court. (ECF No. 42-24 at PageID 2642.) Later that morning, the defense rested without calling Vaulx. (*Id.* at PageID 2651.) The defense made the following offer of proof as to the anticipated substance of Vaulx's testimony:

> [H]ad Ms. [V]aulx been here, we believe that she would have testified that she had given a statement to Sgt. Merritt on or about July the 7th, 2010. She would have stated that on July the 6th of 2010, that she telephoned the MPD, specifically I believe it was Officer Merritt regarding this particular case, that she is a resident on Ladue, the street that is in front of or out from Northmeade, specifically 3840 Ladue. She stated to him that she wanted to provide some information based on what she remembered from July 4th of 2010.
>
> Her statement was that she was sleeping when she had heard a number of shots being fired. She stated that she woke up and she looked out of her bedroom window, and that her bedroom window faces 2706 Northmeade. She stated that she observed a large number of people running around the front lawn in 2706 North—Northmeade.
>
> She also stated that she observed an unidentified black male being helped into a red vehicle that was parked on the street in front of the residence. Ms.

6

> [V]aulx also stated that she observed a black male placing a, quote, sawed-off shotgun into the back seat of that vehicle. She also stated that she would not be able to identify the individual that placed the shotgun into the back seat of that red vehicle because it was dark and she did not know the individual that was handling the gun.

(*Id.* at PageID 2656-57.) The trial judge stated that he was "strained to see how that [anticipated testimony] would have been material to any issues that are before the jury." (*Id.* at PageID 2658.) Specifically, there was "no indication that would indicate that shotgun shells were found [at the crime scene] or that a shotgun was fired." (*Id.*)

In denying Brown's motion for a new trial, the trial judge noted that he delayed the close of proof to afford the defense an opportunity to produce Vaulx, but she did not appear. (ECF No. 42-26 at PageID 2898-99.) The trial judge reiterated that, based on the offer of proof, the testimony "would not have made a difference." (*Id.* at PageID 2899.)[3]

### 1. Ineffective Assistance of Trial Counsel Sub-Claim

Brown's claim that his trial counsel rendered ineffective assistance when he failed to offer the witness is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which require a showing that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." To establish deficient performance, a person challenging a conviction "must show that counsel's representation fell below an objective standard of

---

[3] The trial judge also made the following, ambiguous statement: "[T]his Court did give this witness a chance to get to Court and would have issued a material witness arrest warrant and would have had the Sheriff go out and arrest this person and bring her to Court. She chose not to be present, and this Court cannot govern a witness's failure to appear in Court after being subpoenaed by the Defense." (*Id.* at PageID 2898-99.) It is unclear whether the trial judge means that he would have issued a material witness warrant but the defense did not ask for one, or that he did not believe he had the power to enforce the defense subpoena. Whatever the case, the remarks at trial and on the motion for a new trial make clear that the trial judge did not believe Vaulx was a material witness.

reasonableness." *Id.* at 688. A court considering an ineffective assistance claim must apply a "strong presumption" that counsel's representation was within the "wide range of reasonable professional assistance." *Id.* at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690).

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding. Counsel's errors must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Richter*, 562 U.S. at 104 (internal quotation marks and citation omitted); *see also id.* at 111-12 ("In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . The likelihood of a different result must be substantial, not just conceivable.") (citations omitted); *Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam) ("But *Strickland* does not require the State to 'rule out' [a more favorable outcome] to prevail. Rather, *Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different.").

At the post-conviction hearing, Erroll Harmon, Brown's trial counsel, testified that he attempted to interview Vaulx but was unable to locate her. He testified that "[w]e subpoenaed her. We weren't able to locate her. We had private investigators who were sent out to go and speak with her." (ECF No. 42-35 at PageID 3263.) Harmon believed that Vaulx's testimony could have been potentially important to Brown to show "that other people were shooting." (*Id.* at PageID 3264-65.) However, Vaulx did not appear at trial despite being under subpoena. (*Id.* at PageID 3263.) Harmon agreed that the shell casings found at the Northmeade address were all .9 millimeters and that a shotgun had not been fired in the vicinity. (*Id.* at PageID 3283.)

The post-conviction court denied relief. (*Id.* at PageID 3357-59, 3363-54; ECF No. 42-34 at PageID 3198-99.) Brown raised the issue in his brief to the TCCA on the post-conviction appeal. (ECF No. 42-38 at PageID 3401, 3430-36.) The TCCA denied relief on the merits. *Brown II*, 2019 WL 931735, at \*7-9. The TCCA first noted that Vaulx did not testify at the post-conviction hearing and "[n]either the post-conviction court nor this court may speculate on what a witness's testimony might have been if introduced by defense counsel." *Id.* at \*8 (internal quotation marks and citation omitted). Moreover, the TCCA concluded that trial counsel was not ineffective:

> [T]rial counsel in [Brown's] case made extensive efforts to ensure that Vaulx testified at trial. Trial counsel hired an investigator to locate her, subpoenaed her for trial, and successfully obtained a continuance during [Brown's] trial in an attempt to secure her testimony. Unfortunately, despite all these efforts, trial counsel was unable to present Vaulx's testimony at trial. In light of trial counsel's conscientious and repeated efforts to obtain Vaulx's testimony, [Brown] has failed to prove that trial counsel was deficient in not presenting Vaulx's testimony at trial.

*Id.* at \*9. Finally, said the TCCA, Brown had not shown prejudice:

> In addition, [Brown] has not shown that trial counsel's failure to present Vaulx prejudiced the outcome of his case. Vaulx's statement to police shows that

9

> her testimony would not have changed the outcome of [Brown's] trial. Vaulx told police that after being awakened by the gunshots, she looked out her window and observed an unidentified African-American man, whom she did not know and could not identify, placing a sawed off shotgun in the backseat of a red vehicle. While Vaulx's statement might support the fact that there was another shooter the night of the incident, it does not show that the unidentified man she observed fired the fatal shot at Kimberly Jamerson. At trial, the jury heard substantial evidence suggesting that the shooters at the Northmeade location, who were returning fire from the shots fired by [Brown] and his co-defendants, were responsible for Jamerson's death. Because the jury heard evidence suggesting that there were other shooters at the scene and because Vaulx never saw the man responsible for killing Kimberly Jamerson, we conclude that Vaulx's testimony would not have changed the outcome of [Brown's] trial.

*Id.*

Where, as here, a state prisoner's claim has been adjudicated on the merits in state court, a federal court can issue a writ only if the adjudication:

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). The petitioner carries the burden of proof for this "difficult to meet" and "highly deferential standard," which "demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citation omitted). The deference given to a state-court decision under *Strickland* is magnified when reviewing a claim of ineffective assistance of trial counsel under 28 U.S.C. § 2254(d):

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," [*Strickland*, 466 U.S.] at 689; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles* [*v. Mirzayance*], 556 U.S. [111,] 123 [(2009)]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at 123. Federal habeas courts must guard against the

10

> danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Richter*, 562 U.S. at 105 (parallel citations omitted).

A state court's decision is "contrary" to federal law when it "arrives at a conclusion opposite to that reached" by the Supreme Court on a question of law or "decides a case differently than" the Supreme Court has "on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "[A] run-of-the-mill state-court decision applying the correct legal rule . . . to the facts of a prisoner's case" does not "fit comfortably within § 2254(d)(1)'s 'contrary to' clause." *Id.* at 406. Here, the TCCA cited and applied the correct legal rule from *Strickland* and Tennessee cases applying *Strickland*; therefore, the "contrary to" clause is inapplicable. *Brown II*, 2019 WL 931735, at *6.

An "unreasonable application" of federal law occurs when the state court "identifies the correct governing legal principle from" the Supreme Court's decisions "but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. The state court's application of federal law must be "objectively unreasonable" for the writ to issue. *Id.* at 409. It is not sufficient that the habeas court, in its independent judgment, determines that the state court decision "applied clearly established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citing *Williams*, 529 U.S. at 411).

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 103.

11

Brown has not presented an argument that the TCCA's resolution of Claim 1 was objectively unreasonable. He cited no authority for the proposition that a defense attorney who makes reasonable efforts to procure the testimony of a potential witness is ineffective in failing to seek a material witness warrant. He cites 18 U.S.C. § 3144, addressing release or detention of a material witness, (ECF No. 1 at PageID 6-7), but that provision applies to federal criminal trials. Although Tennessee law provides that a material witness may be required to post bail "if it is shown that the witness has refused or will refuse to respond to process," Tenn. Code Ann. § 40-11-110(a), Brown does not discuss how defense counsel could have known that Vaulx would not appear at trial after being subpoenaed. Given the trial judge's conclusion that Vaulx's testimony would not have been material and his refusal to delay the trial further, this provision likely would have been of no assistance to Brown.

Brown also does not address Vaulx's failure to testify at the post-conviction hearing and the TCCA's conclusion that, even if she had testified consistent with her statement to police, he suffered no prejudice. He has, therefore, failed to satisfy his burden of demonstrating that the TCCA's decision on Claim 1 "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

Finally, Brown has not established that the TCCA's decision was based on an unreasonable factual finding. "[W]hen a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, . . . [t]he prisoner bears the burden of rebutting the state court's factual findings 'by clear and convincing evidence.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(e)(1)). A state court factual determination is not "unreasonable"

12

merely because the federal habeas court would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Brown has not addressed the TCCA's factual findings. Consequently, he has not demonstrated that any are objectively unreasonable.

This aspect of Claim 1 is **DENIED**.

### 2. Denial of Compulsory Process Sub-Claim

Brown argues, in the alternative, that his right to compulsory process was violated when the trial court failed to issue a material witness warrant *sua sponte*. (ECF No. 1 at PageID 7.) In his Answer, the Warden argues that this aspect of Claim 1 was not properly exhausted in state court and is barred by procedural default. (ECF No. 43 at PageID 3568.) The Court agrees. A federal court may not grant a writ of habeas corpus on behalf of a state prisoner unless, with certain exceptions, the prisoner exhausted available state remedies by presenting the same claim sought to be redressed in a federal habeas petition to the state courts pursuant to 28 U.S.C. §§ 2254(b) and (c). *Pinholster*, 563 U.S. at 181. The petitioner must "fairly present" each claim to each appropriate state court. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). If a claim has never been presented to the state courts but a state court remedy is no longer available (e.g., when an applicable statute of limitations bars a claim), the claim is technically exhausted, but procedurally barred. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). To avoid procedural default, a habeas petitioner in Tennessee must present his federal claims to the trial court and, on appeal, to the TCCA. *Covington v. Mills*, 110 F. App'x 663, 665 (6th Cir. 2004).

To fairly present a federal claim, a prisoner must argue the same facts and legal theory in the state courts and in his federal habeas petition. *See Anderson v. Harless*, 459 U.S. 4, 6-7 (1982); *Picard v. Connor*, 404 U.S. 270, 276-77 (1971); *Hodges v. Colson*, 727 F.3d 517, 529 (6th

Cir. 2013). "It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made." *Harless*, 459 U.S. at 6 (citation omitted). In evaluating whether a prisoner has "fairly presented" a claim to a state appellate court, the controlling document is the inmate's brief. *See Baldwin*, 541 U.S. at 32 ("[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so.")

Here, Brown did not exhaust a standalone claim that he was denied his right to compulsory process. In his Reply, Brown argues that he can show cause and prejudice for his default because it was due to the ineffective assistance of counsel. (ECF No. 46 at PageID 3581-82.) However, a claim that a procedural default is due to the ineffective assistance of counsel can itself be procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). Brown's claim that counsel failed to seek a material witness warrant appears to be distinct from his claim that counsel failed to secure the appearance of Vaulx (and, if it is not, it is meritless for the reasons previously stated). The Supreme Court's decision in *Martinez v. Ryan*, 565 U.S. 1 (2012), is unavailable to excuse Brown's default because this aspect of Claim 1 is not a claim of ineffective assistance of trial counsel. Brown's standalone compulsory process claim is **DENIED**.

### 3. Ineffective Assistance of Post-Conviction Counsel

Brown's claim that post-conviction counsel was ineffective in failing to secure Vaulx's testimony at the post-conviction hearing is not cognizable in habeas. The law is clear that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction

proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). This aspect of Claim 1 is **DENIED**.

        **B.**        **Admission of Brown's Involuntary Confession (Claim 2)**

In Claim 2, Brown complains that the trial court admitted his involuntary confession. (ECF No. 1 at PageID 7-9.) Specifically, Brown argues that his Fifth Amendment rights were violated "by the extraction of an involuntary confession while [Brown] faced serious pain and distress from a gunshot wound." (*Id.* at PageID 8.)

In his Answer, the Warden notes that Brown has changed the factual theory on which he bases his claim regarding the admission of his confession. (ECF No. 43 at PageID 3568-69.) On direct appeal, Brown exhausted a Fourth Amendment claim that he was arrested without probable cause. (ECF No. 42-28 at PageID 2980, 3001-04.) The TCCA denied relief on the merits. *Brown I*, 2014 WL 5092906, at *16-18.

Shifting gears, Brown now claims that his confession was involuntary under the Fifth Amendment because the police interrogated him while he was suffering from a gunshot wound. The Warden argues that this claim was not exhausted in state court and is now barred by procedural default. (ECF No. 43 at PageID 3568-69.) The Court agrees. Brown did not present any Fifth Amendment claim to the state courts. Because there is no longer any means of doing so, Claim 2 is barred by procedural default.[4] Claim 2 is **DENIED**.

---

[4] Although it is unnecessary to address at length the merits of a procedurally defaulted claim, there is no evidence in the record that Brown sustained a gunshot wound. He raised no such claim in the various proposed amendments he filed either *pro se* or through counsel. He did not testify at the suppression hearing. The witnesses at that hearing testified that the only physical injuries that were apparent on Brown were consistent with a fistfight. (ECF No. 42-13 at PageID 1041, 1055-56, 1089, 1090-91, 1113-15, 1148, 1149, 1150, 1164-65.) At no time when he was

### C.     Failure to Seek a Proximate Cause of Death Instruction (Claim 3)

In Claim 3, Brown argues that his trial counsel rendered ineffective assistance by failing to seek a jury instruction regarding the proximate cause of death. (ECF No. 1 at PageID 9-12.) Brown's theory is that, given the large number of shots that were fired at the scene, the jury could not determine beyond a reasonable doubt that he fired the shot that killed Kimberly Jamerson. (*Id.* at PageID 11.)   Brown contends that the trial judge should have used the following Tennessee pattern jury instruction ("Instruction 42.14"):

> Before the defendant can be convicted of any degree of homicide, the State must have proven beyond a reasonable doubt that the death of the deceased was proximately caused by the criminal conduct of the defendant . . . .   The proximate cause of death is that cause which, in natural and continuous sequence, unbroken by any independent intervening cause, produces the death and without which the death would not have occurred.

(*Id.*)[5]

---

being interrogated did Brown ask for medical attention. (*Id.* at PageID 1047-48, 1061, 1097, 1115, 1152.)   Brown would have been examined by medical staff when he was first taken to the Shelby County Jail; if he needed medical assistance, he would not have been booked into the Jail or taken to the homicide office.   (*Id.* at PageID 1056, 1126-29.)

[5] As a preliminary matter, Claim 3 misstates the law.  The State never undertook to establish that Brown fired the bullet that killed Jamerson.  The State's theory was that Jamerson was killed by Brown or by someone for whom Brown is criminally responsible.  (*See* ECF No. 42-12 at PageID 976 (to convict Brown of first degree murder, the State must prove beyond a reasonable doubt "that the defendant, or one for whom the defendant is criminally responsible, unlawfully killed Kimberly Jamerson . . . .").)   The jury was instructed that Brown could be found guilty on a theory of criminal responsibility "if the offenses were committed by the defendant's own conduct, by the conduct of another for which the defendant is criminally responsible, or both.  Each party to the offense may be charged with the commission of the offense."   (*Id.* at PageID 992.)   "The defendant is criminally responsible for an offense committed by the conduct of another if, acting with the intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the defendant solicits, directs, aids, or attempts to aid another person to commit the offense."   (*Id.* at PageID 993.)

16

Brown raised Claim 3 during the post-conviction proceeding. The post-conviction court denied relief on the merits. (ECF No. 42-34 at PageID 3208-09.) The issue was presented to the TCCA on the post-conviction appeal. (ECF No. 42-38 at PageID 3401, 3437-41.) The post-conviction court denied relief. *Brown II*, 2019 WL 931735, at *9-11. The TCCA concluded that a proximate cause of death instruction was not warranted for the following reasons:

> [Brown] has failed to establish that trial counsel was ineffective in failing to request this instruction. We note that the proximate cause of death instruction is given when there is evidence that the victim's death was caused by an independent, intervening act or omission that the defendant could not reasonably have anticipated.
>
> . . . .
>
> Here, the proof showed that either [Brown] or his co-defendants fired the fatal bullet or someone from the Northmeade location fired the fatal bullet, but there was no evidence that Kimberly Jamerson's death was caused by an independent, intervening act or omission that the responsible party could not reasonably have anticipated. Because pattern jury instruction 42.14 was clearly inapplicable to the evidence presented at [Brown's] trial, we conclude that [Brown] has failed to show that trial counsel was deficient in failing to request this instruction or that such an instruction would have changed the outcome of [Brown's] trial. Accordingly, [Brown] is not entitled to relief on this issue.

*Brown II*, 2019 WL 931735, at *10, 11.

Brown cannot satisfy his burden of demonstrating that the TCCA's decision on this issue is contrary to, or an unreasonable application of, *Strickland*, or that it is based on an unreasonable factual determination. The TCCA, interpreting Tennessee law, held that Instruction 42.14 cannot be used to support Brown's argument that Jamerson might have been killed by someone other than himself or his co-defendants. Rather, Instruction 42.14 would be warranted only if there was evidence from which the jury could conclude that Jamerson was killed by something other than gunfire, such as lightning or being struck by a car. The fact that the Chambers brothers returned

fire is not, under Tennessee law, "an independent, intervening act or omission that [Brown] could not reasonably have anticipated." *Id.* at *10.

In various proposed amendments, Brown has parsed Tennessee law to argue that the TCCA's interpretation is incorrect. However, error in the application of state law is not cognizable in a federal habeas proceeding. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law."). This Court is bound by the TCCA's interpretation of Tennessee law in *Brown II*. Given that decision, the Court cannot find that counsel was ineffective in failing to request Instruction 42.14 or that Brown suffered prejudice.

Claim 3 is without merit and is **DENIED**.

\* \* \* \*

Because every claim asserted by Brown is without merit, the Court **DENIES** the § 2254 Petition. The § 2254 Petition is **DISMISSED WITH PREJUDICE**. Judgment shall be entered for Respondent.

## III. APPEAL ISSUES

Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2254 petition and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b). The COA must indicate the specific issue or issues that satisfy the required showing. 28 U.S.C. §§ 2253(c)(2)-(3). No § 2254 petitioner may appeal without this certificate. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).

A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks omitted).

> Where a district court has rejected a constitutional claim on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. . . . When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "In short, a court should not grant a certificate without some substantial reason to think that the denial of relief might be incorrect." *Moody v. United States*, 958 F.3d 485, 488 (6th Cir. 2020). "To put it simply, a claim does not merit a certificate unless *every independent reason to deny the claim is reasonably debatable*." *Id.*

In this case, there can be no question that the § 2254 Petition is meritless for the reasons previously stated; therefore, the Court **DENIES** a COA.

Rule 24(a)(1) of the Federal Rules of Appellate Procedure provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. However, if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a) (4)-(5). In this case, for the same reasons the Court denies a COA, the Court determines that any appeal would not be taken in good faith. It is therefore **CERTIFIED**, pursuant to Federal Rule of Appellate Procedure 24(a),

that any appeal in this matter would not be taken in good faith, and leave to appeal *in forma pauperis* is **DENIED**.[6]

**IT IS SO ORDERED**, this 26th day of September, 2023.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE

---

[6] If Petitioner files a notice of appeal, he must pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days of entry of this Order. *See* Fed. R. App. P. 24(a)(5).