IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| KENNETH BROWN, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>JOHNNY FITZ, )<br>)<br>Respondent. ) | Case No. 2:20-cv-02315-SHL-atc |

**ORDER DENYING MOTION FOR RELIEF FROM JUDGMENT**

Before the Court is the Motion for Relief from This Courts Order Denying Request to Hold the Instant Habeas Corpus Proceedings in Abeyance and Motion for Delayed Consideration of Unexhausted Claims in Light of the Fact that Petitioner is Entitled to Analysis Under Both *Herrera v. Collins*, 506 U.S. 390, 113 S. Ct. 853, 122 L.Ed.2d 203 (1993) and *Schlup v. Delo*, 513 U.S. 298, 303 (1995) Because He Is Putting Forth Material Evidence in State Court of His Actual Innocence of the Murder of Kimberly Jamerson ("Motion for Relief from Judgment"). (ECF No. 79.) For the reasons stated below, the motion is **DENIED**.

**I.    PROCEDURAL HISTORY**

The Court issued an order on September 25, 2023, denying various pending motions filed by Brown, including two motions to hold the case in abeyance while he pursued certain claims in state court. (ECF No. 74 at PageID 4445–46.) On September 26, 2023, the Court denied habeas relief and denied a certificate of appealability. (ECF No. 75.) Judgment was entered the same day. (ECF No. 76.) Brown then filed a notice of appeal on October 27, 2023. (ECF No. 77.) The matter is now pending before the Sixth Circuit Court of Appeals as case number 23-5966. (ECF No. 80.)

On October 31, 2023, Brown filed his Motion for Relief from Judgment. (ECF No. 79.)

## II.   ANALYSIS

The Court construes the Motion for Relief from Judgment as seeking relief under Rule 60(b)(1) of the Federal Rules of Civil Procedure, which authorizes a court to relieve a party from a final judgment for a mistake.[1] "Rule 60(b) does not allow a defeated litigant a second chance to convince the court to rule in his or her favor by presenting new explanations, legal theories, or proof." *Jinks v. AlliedSignal, Inc.*, 250 F.3d 381, 385 (6th Cir. 2001).

In July 2023, Brown initiated two proceedings in the Shelby County Criminal Court: a Petition for DNA Post Conviction Relief[,] Petition for Post Conviction Finger Print Analysis[, and] Petition for Writ of Error Coram Nobis (ECF No. 72-2), and a motion for a new trial (ECF No. 72-3). Although these filings repeatedly refer to newly discovered DNA and fingerprint evidence, no such evidence currently exists. Instead, Brown seeks testing in the hope of obtaining such evidence.

In denying relief on Brown's motions to stay, the Court noted that "he has not provided a reasonable explanation for why he waited until July 2023 to file these state-court documents." (ECF No. 74 at PageID 4446.) The new explanations provided by Brown in his Motion for Relief from Judgment cannot properly be considered because they could have been, but were not, advanced before entry of judgment.

---

[1] Rule 59(e) also authorizes such relief, but a Rule 59(e) motion must be filed within twenty-eight days of judgment. This time period began when the Clerk entered judgment, not when Brown received it in the mail. *See Abuhouran v. United States*, No. 4:06 CV 2505, 2007 WL 1544585, at *2 (N.D. Ohio May 22, 2007). That time cannot be extended. Fed. R. Civ. P. 6(b)(2). Brown signed his motion on September 26, 2023, thirty days after entry of judgment.

2

Brown has attempted to explain why he did not present a single amended petition but, instead, presented his amendments piecemeal; Brown attributes that failure to his two retained attorneys, both of whom were permitted to withdraw. (ECF No. 72-1 at 4314–16.) But counsel's failure to file a single amended petition in this action has no bearing on Brown's failure to pursue his remedies in state court until July 2023. Brown mentions only in passing an agreement he purportedly had with his second attorney, Luke Evans, to file state collateral proceedings. (*Id.* at 4316.)

Even if Brown's tardy explanations are considered, they are unconvincing. Brown's first attorney, Robert Harris Golder, was permitted to withdraw on August 17, 2021. (ECF No. 27 at PageID 414.) Well before that time, it was clear that relations between Brown and Golder had broken down after the matter was dismissed on September 3, 2020, due to Golder's failure to file an *in forma pauperis* affidavit or pay the habeas filing fee. (*See* ECF No. 5.) Brown was plainly on notice from around the time of his first *pro se* filing in January 2021 (ECF No. 21), that he could not rely on Golder to take any effectual action on his behalf.

Brown's second attorney, Luke Evans, filed a notice of appearance on October 14, 2022, more than one year after Golder was relieved. (ECF No. 39.) By February 2023, Brown was seeking leave to make *pro se* filings, and Evans sought to withdraw. (ECF Nos. 50–53.) Evans was permitted to withdraw on March 9, 2023. (ECF No. 55.) Because Brown was *pro se* during most of the time the matter was pending, the Court is not persuaded that the failure to commence these state-court proceedings in a timely manner was the fault of prior counsel.

This failure to pursue relief is especially striking in light of the fact that Golder and Evans are not the only attorneys who chose not to pursue these claims. In his original post-conviction

3

petition, Brown complained that his attorney failed to process the shells for fingerprints, failed to search adequately for the rifle at the home of the Chambers brothers, and failed to retain a firearms expert. (ECF No. 42-34 at PageID 3139, 3141–43.) These issues were not explored at the post-conviction hearing. Instead, post-conviction appellate counsel attempted to resurrect those claims in a brief to the Tennessee Court of Criminal Appeals ("TCCA") on the post-conviction appeal, in which he asked for a second hearing. (ECF No. 74 at PageID 4444.) The TCCA denied relief, holding that Brown was responsible for the decisions made by his attorney. *Brown v. State*, No. W2017-01755-CCA-R3-PC, 2019 WL 931735, at *11 (Tenn. Crim. App. Feb. 22, 2019). Thus, three separate attorneys found these claims lacking sufficient merit to pursue them.

Finally, as previously stated, the claims Brown now seeks to pursue are plainly meritless. (*See* ECF No. 74 at PageID 4441–42, 4446.) For Brown to prevail, he must show **both** that Kimberly Jamerson was killed by a 7.62 x 39 bullet **and** that the bullet was fired by someone other than Brown or someone who can be held criminally responsible. Tennessee Bureau of Investigation ("TBI") Special Agent Steve Scott testified that the bullet fragments removed from Kimberly Jamerson's head are not consistent with the 7.62 cartridge cases. (*Id.* at PageID 4441–42.) None of the testing that Brown now seeks addresses the cause of death.

As for the source of the 7.62 x 39 bullets, Mark Chambers provided the police the guns he fired that day: a .9mm Smith and Wesson and a .9mm Ruger. *State v. Brown*, No. W2013-00329-CCA-R3-CD, 2014 WL 5092906, at *4 (Tenn. Crim. App. Oct. 9, 2014). The guns used by Brown and his co-defendants were not recovered. It is extremely unlikely that DNA will be found on a spent shell casing, both because of the small size of the casing and the fact "that the act of firing a shell destroys the DNA so that the chance of it being on the fired shell is slim to none."

*Delawder v. Warden, Ross Corr. Inst.*, Case No. 1:16-cv-743, 2018 WL 488160 at *4 (S.D. Ohio Jan. 19, 2018) (internal quotation marks omitted); *see also id.* at *5–6 (denying *Brady* claim in part because of the testimony of a forensic scientist who had conducted countless DNA tests, "could not recall anyone obtaining a DNA profile from a fired shell, [and thought] there was little or no chance that DNA remained on the fired shotgun shell. The mere possibility that the fired shell could still be tested . . . did not establish that this evidence was materially exculpatory."); *Booth v. Anderson*, Civil Action No. 3:22cv426, 2023 WL 5352304, at *10 (E.D. Va. Aug. 21, 2023) (rejecting habeas claim based on lack of physical evidence linking defendant to apartment, noting that a detective testified that officers did not even try "to collect DNA or fingerprints from the cartridge casing or unspent round because when a gun is fired it degrades any potential DNA or fingerprints that would then be on the spent shell casing and that it was uncommon to find DNA or fingerprints on an unspent round.") (internal quotation marks omitted). This Court, like many others throughout the country, is unpersuaded by such statistically unlikely and scientifically improbable claims.

Thus, the Motion for Relief from Judgment is **DENIED**.

**IT IS SO ORDERED**, this 1st day of March, 2024.

                                              s/ Sheryl H. Lipman  
                                              SHERYL H. LIPMAN  
                                              CHIEF UNITED STATES DISTRICT JUDGE